## HUGHES V. STANLEY.

1. **Contract:** COMPETENCY OF: CUSTOM. It is competent for parties to enter into a contract in accord with an established usage or custom recognized by both, and the contract will be binding upon them.

2. ———: ———. The present case distinguished from *Johnson v. Brown*, 37 Iowa, 200.

3. ———: RECEIPT FOR GRAIN: WAREHOUSEMAN. While the receipt of a warehouseman for grain received by him may be evidence indicating that the transaction is a sale, yet it will not be received to defeat the conditions of an oral agreement between the parties.

4. **Practice in the Supreme Court:** MOTION TO STRIKE BILL OF EXCEPTIONS. A motion will not lie to strike the bill of exceptions on the ground that it does not correctly present the evidence.

*Appeal from Marshall District Court.*

WEDNESDAY, APRIL 18.

ACTION at law. The petition is in two counts. The first claims to recover for 303 5-6 bushels of wheat sold and delivered by Henry Hopkins to defendant at the market price, alleged to be $1.25 per bushel. It is expressly alleged that the contract of sale was not in writing and that Hopkins transferred his interest in the claim to plaintiff. The second count is as follows:

"In the month of May, 1872, and for six years prior and up to that date, defendant was a warehouseman and operating a warehouse in Marshalltown, Iowa.

"That it was the custom of defendant and others during said time, to receive grain into his elevator and mix the same with other grain belonging to defendant and ship and sell the same as his own, charging the person leaving the same one

cent per month on each bushel until such time as the depositor elected to take grain of like grade and kind, or its value in money at market price in Marshalltown at time of election and demand.

"That in the month of October, 1871, Henry Hopkins placed in defendant's warehouse two hundred and three and 5-6ths bushels of No. 1 "T" Spring wheat. Said wheat was placed in said warehouse under and in compliance with said custom, and it was agreed, not in writing, between defendant and said Hopkins that said wheat was placed in said warehouse upon the terms of the custom before set forth.

"About January 1st, 1872, said Hopkins sold, verbally, all his right in the wheat deposited as aforesaid and said agreement to plaintiff, which is now owned by him and unpaid.

"That at various times before the commencement of this suit plaintiff demanded of defendant said wheat and wheat of like grade and kind and value of same at time of such demands, and offered to pay storage due on same, but defendant at all times refused to deliver the wheat, or wheat of like grade and kind, or to pay its market value at time of demand, less storage. At the time of demand the wheat was worth $1.25 per bushel. Said wheat was not placed in a separate bin, but was mixed with other wheat belonging to defendant by defendant, and by him shipped and sold before said demand was made."

The answer, after a general denial of the allegations of the petition, sets up, in a second count, the following defense:

"For other and further answer, defendant avers that on or about the 21st of October, 1871, one Hopkins, the assignor of plaintiff, stored in defendant's elevator 203 5-6 bushels of No. 2 Spring wheat, and at the time of storage said grain was delivered without any express agreement or contract whatever, relying on the well known usage of defendant's business, which was in substance this:

"A so-called wheat ticket was delivered to the depositor, containing upon it the number of bushels and kind of grain delivered, and a stipulation that same was at owner's risk from fire; that the grain should be put in defendant's ware-

house and one cent per month per bushel should be paid as storage till the grain was called for by depositor; that the defendant should not be required to place the grain so stored in a separate bin, nor keep on hand the same identical grain; that the identity of the grain was immaterial; that it would be sufficient to store in the same bin with other grain of like grade and quality so long as convenient, and the same identical grain might be shipped out and sold, if convenient; that the same number of bushels of same grade (in defendant's warehouse), though not identical, should at all times stand in the place of and be considered and treated as the identical grain belonging to depositor, subject to his call, owned by him, and at his risk with all the incidents of an ordinary storage for hire by bailor with a warehouseman; that on presentation of ticket the grain, on payment of storage, should be re-delivered to depositor, unless he elected to sell the same. In case, however, of loss by fire before so called for or sold by depositor, then the defendant (if he had an equivalent amount of same grade of same grain on hand in the warehouse and it was destroyed by fire), was to be exempt from liability for such loss, and the depositor was to bear the loss the same as if his own identical grain still owned by him, stored in a separate bin, had been burned in the warehouse, and defendant's sole liability and undertaking was to produce and deliver to depositor, when called for, the same amount of the same kind and grade of grain, if the same had not been destroyed by fire at the time called for.

It was also understood that the reception by the depositor of such wheat ticket was equivalent to a writing of above substance and effect signed by depositor.

And defendant avers that he has faithfully on his part performed his part of such usage and implied understanding— that no call was in fact ever made for the grain aforesaid prior to the 4th of May, 1872.

And on said 4th day of May, 1872, while the defendant was under only the special liability aforesaid of an ordinary warehouseman, with special release from damages by fire—the grain being strictly at the risk of the depositor as to fire—in

the great fire at Marshalltown the warehouse of the defendant with the grain so held for delivery on demand was entirely consumed without the fault or negligence of the defendant."

To the second count of defendant's answer plaintiff demurred. The demurrer was overruled.

The cause was submitted for trial to a jury. A verdict and judgment was had for defendant. Plaintiff appeals.

*Caswell & Meeker*, for appellant.

*Boardman & Williams*, for appellee.

BECK, J.—This cause was submitted by counsel at the June term, 1874. From an oversight of the clerk it was not entered upon our submission dockets and therefore did not come into the hands of the court, and of course no decision therein could be made. It did not reach us until the present term, when it was entered upon our dockets and submitted for decision of the court.

I. The first point of the case we shall consider, involves the correctness of the ruling of the court upon plaintiff's demurrer to defendant's answer.

The first count of the petition sets up a verbal contract of sale of the wheat, the second the delivery of the wheat to defendant, under a usage, by the verbal agreement of the parties. It is alleged that, under this usage, the defendant received and so appropriated the wheat that the law implies a contract of sale. The second count of the answer sets up a usage or custom which was known to the parties, under which the wheat was delivered, to the effect that it should be stored with other grain in common bins and that the same number of bushels of other grain of the same grade should be regarded as the property of plaintiff and that defendant was not to be liable for its loss by fire. The pleadings show a usage and custom of trade, known to plaintiff, with reference to which the contract was made. It is, surely, competent for parties so to contract. They may make their contracts to accord with customs or usages and with reference thereto. This is an elementary principle of the law. The

*1. CONTRACT: competency of: custom.*

second count of plaintiff's petition is based upon a contract made with reference to a custom.

The answer alleges no terms or conditions of the contract growing out of or dependent upon the custom recited, which the parties were not entirely competent to adopt. The demurrer was properly overruled.

II. It is insisted that certain evidence was erroneously admitted. It tended to support the custom or usage pleaded by defendant in his answer, and his allegation that the contract under which the grain was received was made with reference thereto. It was properly admitted under the issues found upon the second count of defendant's answer.

III. The instructions, in our opinion, fairly presented to the jury the issues raised by the pleadings and the rules necessary to reach a correct determination thereof. The issues of fact, as found, involved the terms of the contract made by the parties whether they were of the character claimed by plaintiff or as claimed by defendant. The existence and effect of the usage or custom under which the contract was made were involved in this issue. If they were found as alleged by plaintiff, he was entitled to recover; if as set up in the answer, defendant should recover. It may be that the issues could have been more clearly and directly presented to the jury than was done in the instructions given, but we think no ground exists for holding them prejudicially defective.

IV. It is insisted by plaintiff that the verdict is not supported by the evidence. We are of a different opinion. The jury, we think, were justified in finding the contract to be of the character alleged in defendant's answer and the facts to be such as are therein pleaded.

V. The plaintiff relies upon *Johnston v. Brown*, 37 Iowa, 200. That case is clearly distinguishable from the one before 2. —: ——. us. In this case the terms of the contract, as found by the jury, are to the effect that the grain could be mixed with other grain in store, and the proper number of bushels in the warehouse should be regarded as plaintiff's property and be held by defendant free of any risk. No such facts or contract were involved in the case cited.

The receipt or warehouse ticket contains matters upon which the position could well be taken that the delivery of the grain to defendant amounted to a sale, and that such ticket amounts to a contract to that effect. But plaintiff declares on no such contract, or at least does not declare upon the ticket as embodying that contract, but avers that it was oral. He cannot, in this cause, rely upon the ticket as presenting the contract under which he claims to recover.

VI. Defendant, since the cause has been pending in this court, filed a motion to strike the bill of exceptions, and especially the evidence embodied in it, on the ground that the evidence is improperly incorporated therein. The objection does not appear upon the face of the record, but is shown by affidavits. The record cannot be contradicted in this way. If the facts be as alleged by defendant, he should have had the record amended upon suggestion of diminution, or if the record as it appears in the court below requires change to make it correspond with the facts, proper steps should have been there taken to amend it. The motion is overruled.

