PETER ELLER, Appellant, v. N. J. LOOMIS.

**Master and Servant:** NEGLIGENCE: *Jury question.* Plaintiff was injured by the falling of a scaffold on which he was working as a bricklayer, in pursuance of a contract of hiring made between his father and defendant. The father testified that, when the contract was made, defendant agreed to build the scaffold, which was corroborated by others, and denied by defendant, who claimed that he contracted with the father to furnish the man, and that the building of the scaffold was part of the employment. *Held,* that the question whether defendant agreed to build the scaffold was for the jury, since, in determining the sufficiency of the evidence to submit an issue to the jury, the test is whether plaintiff is entitled to the jury's judgment as to what it proves.

**Plea and Proof:** GENERAL DENIAL: *Custom.* Where an action is based on injuries caused by the falling of a scaffolding, the defense that there was a custom of bricklayers to build their own scaffolds is not available under general denial. Such must be specially pleaded, since section 2704, Code, 1873, limits evidence under such denial to a negation of what the other party is bound to prove.

PLEA AND CHARGE. The admission of immaterial evidence without objection does not justify an instruction raised only by such evidence.

*Appeal from Dubuque District Court.*—HON. J. L. HUSTED, Judge.

TUESDAY, OCTOBER 11, 1898.

ACTION for personal injuries.   Judgment for defendant, and plaintiff appeals.—*Reversed.*

*Dunham & Norris, Longueville & McCarthy,* and *Utt & Michel* for appellant.

*Lyon & Lenehan* for appellee.

GRANGER, J.—I.   Plaintiff is a brickmason by trade, and in November, 1893, he was employed to work on a building being erected by defendant at Farley, Iowa.   While so engaged, he, with others, was on a scaffold that, because of the weight thereon, fell, and plaintiff was injured; and this action is for damages sustained by him, under a claim that defendant was required to and did erect the scaffold, and in so doing was negligent, because of which he (plaintiff) was injured.   The answer put in issue the claim that defendant was required to make the scaffold, or that he did erect it, or was guilty of negligence.   The issues were tried to a jury that returned a general verdict for defendant and special findings that Charles Anderson and George Loomis built the scaffolding on the north part of the building, including the part that fell, and that defendant did not do any of the work in building or directing the building of the scaffold which fell.   A ground upon which rests the claim that defendant was required to erect the scaffold is that he agreed so to do at the time of plaintiff's employment.   The averment to that effect in the petition being denied, the court gave to the jury the following instruction: "There has also been testimony introduced before you bearing upon the question as to whether or not defendant entered into any contract by which he agreed to construct and furnish all the necessary scaffoldings for the brick and stone work upon the building in question.   You are instructed that the testimony so introduced will not warrant you or justify you in finding that such contract was made, and you will therefore assume as a fact that no such contract was made."   The effect

of the instruction was to settle the issue, as to an agreement by
defendant to construct the scaffolding, favorably to him, on
the ground that the evidence would not justify a finding
against him. To sustain the instruction, the record must
show the evidence to be so in favor of defendant as to be with-
out substantial conflict. The record is clearly against such a
conclusion. It appears from the evidence that plaintiff's
father is a brickmason and contractor, and that plaintiff and
others, who are bricklayers, came to work on the building
in pursuance of a talk between defendant and plaintiff's
father. At the time of this talk, plaintiff, his two brothers,
and others were at work for plaintiff's father on another job,
and they came to defendant's job as a result of an under-
standing between the father and defendant. If there was
ever an agreement that defendant should erect the scaffolding
himself, it was during the talk referred to. The father is
a witness for plaintiff, and he states, in terms unmistakable,
that defendant preferred and agreed to make the scaffolds.
We give a part of the father's testimony, to show its char·
acter. Referring to defendant, the witness said: "He says:
'We want to build every scaffold. While the bricklayers are
building on the north side of the building, we will build the
scaffold on the other side,—me and my sons; and, if I need
any help, I can get the help down in Farley cheaper than I
can here,—if I need any more help.' Says I: 'If you want
to build your own scaffolds, Mr. Loomis, you know what it is.
Scaffolding is the most particular business in that trade.'
'Well,' he says, 'hadn't I ought to know how to build a
scaffold,—a man that puts up so many building as I do?'
'Well,' says I, 'you ought to.' 'Well,' he says, 'if you will
let me have these men to work for me, I will give them a good
scaffold.' 'I will give them a good scaffold, and take care
of them,' he says. Says I: 'That is all right, Mr. Loomis.
I trust to your word.' " It appears from the testimony of
this witness that he, his two sons, and the defendant were all
that were present when the talk took place. The two sons

were witnesses for plaintiff, and corroborated the testimony
of the father as to defendant's statements about building the
scaffolds.   The defendant just as explicitly denies any such
talk or understanding.   There is no basis for a reasonable
denial that the evidence on the question is in substantial con-
flict.   It is defendant's theory that he did not employ the men,
but contracted with plaintiff's father to furnish the men to
do the work for specified daily wages, payment therefor to
be made to the father, and he to pay the men as his employes,
and that the building of the scaffolds was a part of the work
for which the men were employed.   The law of this state as to
the obligation of a master to provide a safe place to work is
well settled.   See *Fink v. Ice Co.,* 84 Iowa, 321; *Haworth v.
Manufacturing Co.,* 87 Iowa, 765; *Blazenic v. Coal Co.,*
102 Iowa, 706; *Corson v. Coal Co.,* 101 Iowa, 224; *Humpp-
ton v. Unterkircher,* 97 Iowa, 509.   In view of the well-
settled rule of these cases, the question of who was plaintiff's
employer was important, as was also the character of the
employment; that is, was the building of the scaffolds a part
of the work to be done by the masons, or was the place to work
to be provided by defendant?   This question of fact was
plainly in issue.   The instruction in question settled that
issue against plaintiff, to his prejudice, in view of the unmis-
takable conflict of evidence.   The argument in support of
the action of the court goes to the question of what the evi-
dence proves.   We do not think that is the proper test.   The
weight of the evidence settles that.   The question we consider
is, had the plaintiff a right to the judgment of the jury as
to what was proven, in view of the evidence before it?   We
are clearly of the opinion that he had, and that the court erred
in giving that instruction.

II.   The court gave the following instruction: "Under
the uncontradicted evidence in the case, according to the
custom of bricklayers, the duty of building the scaffold in
question, in the absence of a specific contract, was devolved
upon the plaintiff and his fellow bricklayers and helpers;

and, if you find from the testimony that they, or some of them, built the scaffold that fell down and caused the injury of which the plaintiff complains, then you are instructed that the plaintiff cannot recover against the defendant, even though you should find that the defendant's son, George Loomis, assisted said bricklayers, or their helpers, or some of them, in doing the work upon said scaffold, and your verdict should be for the defendant." The complaint is that no such custom was pleaded, and it is true that none was. Such a custom has not the force of law, so that the parties are presumed to have contracted with reference to it. That parties may contract with reference to a custom known to them is well settled. *Hughes v. Stanley,* 45 Iowa, 622. The custom referred to in the instruction, to render it a part of the contract, must have been considered in reaching the agreement. *Windland v. Deeds,* 44 Iowa, 98. Such a contract, if used to defeat a recovery, changes the issue from that presented by the petition and answer, and should be pleaded. In *Lindley v. Bank,* 76 Iowa, 629, it was sought to take advantage of a custom to change the effect of a contract as pleaded, and the right was denied because the custom was not pleaded.

2       So far as we know, the practice in this state, to make such a custom available, as affecting a contract, is to plead it. *Hughes v. Stanley, supra.* It would seem to be the reasonable rule, and in harmony with section 2704 of the Code of 1873, where the answer is a denial, as in this case: "Under a denial of an allegation, no evidence shall be introduced which does not tend to negative some fact, the party making the controverted allegation is bound to prove." Proof of such a custom did not negative any fact plaintiff was bound to prove, and the statute seems clearly applicable.

3       It is said the evidence was admitted without objection. Such a fact would not justify the instruction, if otherwise erroneous. The most that could be said would be that the evidence could be considered under the issues formed. The admission of immaterial evidence will not justify the presentation of new issues in the instructions.

The case involves other errors that need not be separately noticed, as they seem to follow the conclusion of the court in holding the evidence insufficient to present a question of fact to the jury, as stated in the first division of the opinion. Complaint is made of a remark by the court, during the examination of a witness, that we need not set out or consider, as a repetition of it will not likely occur on another trial.— REVERSED.